UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH L. LANDER, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:16-cv-02242-JMS-MPB |
| | ) |
| NANCY A. BERRYHILL Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Joseph Lander applied for disability insurance benefits from the Social Security Administration ("SSA") on November 2, 2012, alleging an onset date of May 29, 2012. [Filing No. 14-6 at 2.] His application was denied initially on March 5, 2012, [Filing No. 14-4 at 4], and upon reconsideration on June 14, 2013, [Filing No. 14-4 at 24]. Administrative Law Judge ("ALJ") David Welch held a hearing on November 14, 2014, [Filing No. 14-2 at 35], and issued a decision on January 30, 2015, concluding that Mr. Lander was not entitled to receive benefits, [Filing No. 14-2 at 12-26]. The Appeals Council denied review on July 15, 2016, [Filing No. 14-2 at 2], rendering the ALJ's decision the final decision of the Commissioner of the SSA (the "Commissioner"), [Filing No. 14-2 at 12-26]. Mr. Lander then filed this civil action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's decision. [Filing No. 1.]

### I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind

of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id*. at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

2

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Mr. Lander was born in 1976, [Filing No. 14-6 at 8], has obtained a GED, [Filing No. 14-2 at 43], and has previous work experience as a welder, shipping and receiving clerk, material handler, and overhead crane operator, [Filing No. 14-2 at 24].[1] Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on

---

[1] Both parties provided a detailed description of Mr. Lander's medical history and treatment in their briefs. [Filing No. 19; Filing No. 24.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Mr. Lander, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

3

January 30, 2015, determining that Mr. Lander was not entitled to receive disability benefits. [Filing No. 14-2 at 12-26.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Lander had not engaged in substantial gainful activity[2] since the alleged onset date. [Filing No. 14-2 at 14.]

- At Step Two of the analysis, the ALJ found that Mr. Lander suffered from the following severe impairments: "Chronic heart failure, cardiomyopathy, post cardiac defibrillator implantation; [t]ransient ischemic attack, historically; [c]ardiac arrhythmias, including Wolff-Parkinson-White syndrome and left bundle branch block; and [m]ajor dysfunction of a joint (for any cause), left shoulder . . . ." [Filing No. 14-2 at 14-15.]

- At Step Three of the analysis, the ALJ found that Mr. Lander did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 14-2 at 17.]

- After Step Three but before Step Four, the ALJ found that Mr. Lander has the RFC to perform light work with the following limitations: "[Mr. Lander] can lift up to 20 pounds occasionally, and lift or carry up to 10 pounds frequently. [Mr. Lander] can sit, stand and walk, each respectively, approximately two hours at one time, each, and approximately six hours total, each, during an 8-hour workday, all with normal breaks. [Mr. Lander] can frequently operate foot controls, never climb ladders, ropes or scaffolds, but can occasionally climb ramps or stairs, occasionally kneel, crouch, or crawl, and frequently balance or stoop. Further, [Mr. Lander] can occasionally engage in overhead reaching, but frequently engage in all other reaching and frequently

---

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

4

perform handling, fingering, and feeling. Finally, [Mr. Lander] must avoid concentrated exposure to extreme cold, heat, and unprotected heights." [Filing No. 14-2 at 18.]

- At Step Four of the analysis, the ALJ found that Mr. Lander is unable to perform any past relevant work. [Filing No. 14-2 at 24.]

- At Step Five of the analysis, the ALJ found that considering Mr. Lander's age, education, work experience, and RFC, there are jobs in the national economy that Mr. Lander can perform, such as a Night Office Cleaner. [Filing No. 14-2 at 25.]

Mr. Lander asked the Appeals Council to review the ALJ's decision, but that request was denied on July 15, 2016, [Filing No. 14-2 at 2], making the ALJ's decision the Commissioner's final decision subject to judicial review, [Filing No. 14-2 at 12-26]. Mr. Lander then filed this civil action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's decision. [Filing No. 1.]

### III.
### DISCUSSION

Mr. Lander raises several issues on appeal, and the Court will address them as follows: (1) whether the ALJ improperly evaluated the opinion evidence of Mr. Lander's treating physician, Dr. Harry Lim, [Filing No. 19 at 19]; (2) whether the ALJ improperly evaluated the opinion evidence of Mr. Lander's examining physician, Dr. Suzanne Leiphart, [Filing No. 19 at 20]; (3) whether the ALJ erred in his credibility analysis, [Filing No. 19 at 25]; and (4) whether the ALJ erred by relying on vocational testimony that did not correspond to the hypothetical that he posed, [Filing No. 19 at 28].

### A. Treating Physician's Opinion

Mr. Lander argues that the ALJ erred when he assigned "partial weight" to, and failed to give good reasons for discounting, the opinion of his treating cardiologist Dr. Lim. [Filing No. 19 at 20.] Mr. Lander argues that Dr. Lim, who treated him regularly for his cardiac condition since May 2012, completed a medical source statement in August 2012, and a second medical source statement in October 2013 (signed January 2014). [Filing No. 19 at 21.] He claims that in finding that Dr. Lim's opinion was "contrary to his own treatment records," the ALJ overlooked evidence of symptoms that persisted, including dyspnea on exertion, daytime fatigue, dizziness, lightheadedness, and "0-2 pillow orthopnea," among other symptoms, despite implantation of a BiV-ICD[3] and medication management. [Filing No. 19 at 21-22.] He argues that the ALJ is still required to consider Mr. Lander's subjective symptoms when discussing his overall functionality. [Filing No. 19 at 23.] In addition, Mr. Lander argues that when the ALJ decided not to give controlling weight to Dr. Lim's opinion, the ALJ mentioned the "long lasting treatment" with Dr. Lim, but failed to discuss "the nature, extent, and frequency of examination, and how consistent the medical opinion is with the record as a whole." [Filing No. 19 at 23.]

In response, the Commissioner argues that the ALJ properly articulated why Dr. Lim's opinion should not be afforded controlling weight. [Filing No. 24 at 16.] The Commissioner claims that "many of Dr. Lim's findings [from the August 2012 opinion] actually supported the ALJ's RFC finding." [Filing No. 24 at 16.] The Commissioner further asserts that the ALJ pointed

---

[3] BiV-ICD, or Biventricular Implantable Cardioverter Defibrillator ("defibrillator"), is a device "for patients with severe left ventricular heart failure . . . used to provide a more balanced method of controlling rapid heart beat (arrhythmia). The [defibrillator] leads are attached in the right atrium, the right ventricle and the left ventricle. [It] detects when the heart is beating at a faster than normal rate, and shocks it back to normal." http://www.cts.usc.edu/zglossary-biventricularicd.html (last visited July 3, 2015).

out that Dr. Lim noted that Mr. Lander had two subsequent restrictions, which she claims were actually in conflict with his own findings. [Filing No. 24 at 16.] The Commissioner claims that four other doctors disagreed with Dr. Lim's opinion that Mr. Lander "required three absences from work per month and could only rarely stoop or crouch." [Filing No. 24 at 17.] The Commissioner claims that the ALJ did consider Mr. Lander's "subjective allegations of shortness of breath and dizziness, and noted that these symptoms did not manifest during most examinations," and that Mr. Lander admitted that he can do "a low stress desk job with time to adjust from his lack of experience." [Filing No. 24 at 17.]

In reply, Mr. Lander reiterates that the ALJ failed to consider how his conditions have persisted despite the defibrillator implantation and medication management. [Filing No. 25 at 4.] He claims that the ALJ overlooked Dr. Lim's consistent treatment with Mr. Lander, and the symptoms Mr. Lander has continuously experienced noted by Nurse Practitioner Maria T. Galbo. [Filing No. 25 at 4.] He also claims that "[n]one of the other [four] medical opinions . . . involve a treating relationship, multiple examinations, or specialty in cardiology." [Filing No. 25 at 4.] Mr. Lander claims that the Commissioner mischaracterizes the record to persuade this Court that he is capable of a sit-down job. [Filing No. 25 at 5.]

Under 20 C.F.R. § 404.1527(c)(1), an ALJ should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the

claimant]" because of his greater familiarity with the claimant's conditions and circumstances.[4] *Minnick v. Colvin*, 775 F.3d 929, 937-38 (7th Cir. 2015). Section 404.1527(c)(2) provides that "[i]f [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *Minnick*, 775 F.3d at 938. If the ALJ opts not to give a treating physician's opinion controlling weight, he must apply the factors under 20 C.F.R. § 404.1527(c)(2)-(6).

Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004). In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Here, the ALJ acknowledged that Dr. Lim was Mr. Lander's treating cardiologist, and he discussed Mr. Lander's medical history with Dr. Lim and Dr. Lim's two medical source assessments – one from August 2012 and one from January 2014. [*See* Filing No. 14-2 at 21-22.] The ALJ noted that Mr. Lander began treating with Dr. Lim in 2012. He noted that around that

---

[4] The SSA adopted new rules for agency review of disability claims for applications filed on or after March 27, 2017. 82 Fed. Reg. 5844-01. The new regulations in part eliminate the treating-physician rule, which gives more weight to the evidence of disability from acceptable medical source providers who have an ongoing relationship with the claimant. 82 Fed. Reg. 5844-01. The SSA "adjudicators will [now] articulate how they consider medical opinions from all medical sources, regardless of whether or not the medical source is an [acceptable medical source] . . . ." 82 Fed. Reg. 5844-01. Because Mr. Lander applied for disability benefits before March 27, 2017, these changes do not apply to the review of his claim.

8

time, Mr. Lander went to Indiana Heart Hospital where he had a defibrillator implanted. The ALJ indicated that after Mr. Lander had the defibrillator implanted, from October 2012 to January 2013, Mr. Lander's physical exams revealed normal cardiovascular findings with no gallop, no friction rub, and no murmurs heard, and he denied any shortness of breath. [Filing No. 14-2 at 21.] He noted that in September 2013, Mr. Lander experienced random headaches and some pain, but that later in 2013 and 2014, the records indicated that he was feeling better, revealed normal findings, and demonstrated normal-sounded breath, no respiratory distress, no wheezes, and no rales. [Filing No. 14-2 at 21.] However, Mr. Lander points to specific evidence that the ALJ failed to consider that demonstrates Mr. Lander was experiencing symptoms after implantation of the defibrillator. Mr. Lander had follow-up visits with Dr. Lim and Nurse Practitioner Galbo, among others, and their records demonstrate that he was experiencing the following symptoms: dyspnea on exertion, daytime fatigue and sleepiness, dizziness, lightheadedness, "0-2 pillow orthopnea," headaches, chest pain, and shortness of breath. [*See* Filing No. 14-9 at 17; Filing No. 14-9 at 60; Filing No. 14-10 at 15; Filing No. 14-10 at 19; Filing No. 14-10 at 27-28; Filing No. 14-10 at 43; Filing No. 14-10 at 52-53; Filing No. 14-12 at 3; Filing No. 14-12 at 7; Filing No. 14-12 at 11-12; Filing No. 14-12 at 15-16; Filing No. 14-12 at 20; Filing No. 14-12 at 29-30; Filing No. 14-13 at 23-24.]

Moreover, when the ALJ described the restrictions discussed in the August 2012 and January 2014 assessments, he noted that the January 2014 assessment contained more restrictions and "was unreasonable and inexplicable in light of [Mr. Lander's] overall improvement as there are no objective findings that would warrant a decrease in [his] overall functionality. . . . Dr. Lim offered no conclusion to support why the claimant would need to take unscheduled work breaks and miss three days of work per month." [Filing No. 14-2 at 22.] This analysis is flawed because

9

it does not factor in Mr. Lander's subjective symptoms from the records noted above. Dr. Lim's August 2014 assessment indicated restrictions that included in part "dyspnea on exertion," lightheadedness or dizziness from changing positions and extreme temperatures or fumes, and possible fatigue and dizziness from medications. [Filing No. 14-11 at 9-10.] These are similar symptoms noted in follow-up visits with Dr. Lim and Nurse Practitioner Galbo.

The Court is not concluding that the ALJ was required to give more weight to Dr. Lim's opinion because of his reported symptoms. Rather, the Court finds that the ALJ failed to build a logical bridge from the evidence to its conclusion when it failed to factor in Mr. Lander's symptoms from his follow-up visits. *See, e.g., Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("[A]lthough an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it."). On remand, the ALJ must address Mr. Lander's symptoms noted above when analyzing Dr. Lim's opinion and determining Mr. Lander's RFC.

### B. Examining Physician's Opinion

Mr. Lander also argues that the ALJ failed to offer good reasons for discounting the opinion of Dr. Leiphart, a consultative psychologist who performed Mr. Lander's examination on July 4, 2014. [Filing No. 19 at 24.] Mr. Lander claims that the ALJ's decision to give Dr. Leiphart "less than considerable weight" because she lacked access to the longitudinal medical record is "in error" because she had nearly all of Mr. Lander's medical records at the time of her review. [Filing No. 19 at 24-25.] Mr. Lander points out that the ALJ gave "great weight" to non-examining physician Dr. Brooks, although he did not have access to Mr. Lander's entire records to review nor a chance to examine Mr. Lander. [Filing No. 19 at 25.] In addition, Mr. Lander also challenges

the ALJ's decision to reject Dr. Leiphart's opinion that Mr. Lander suffered from the severe impairments of unspecified anxiety disorder and depressive disorder. [Filing No. 19 at 27.]

In response, the Commissioner argues that the ALJ properly weighed Dr. Leiphart's opinion. [Filing No. 24 at 13.] The Commissioner claims that "Dr. Leiphart's significantly restricting limitations were overshadowed both by the more consistent opinion of Dr. Brooks as well as evidence showing marked improvement in mental health functioning and coping even after an only short time of treatment." [Filing No. 24 at 14.] The Commissioner argues that Dr. Leiphart did not have access to "the most relevant records to [Mr. Lander's] mental health treatment – his February through June 2014 mental health treatment at Gallahue . . . ." [Filing No. 24 at 14.] The Commissioner argues that the ALJ made sure at the hearing that Dr. Brooks would have access to newly submitted evidence. [Filing No. 24 at 14-15.]

In reply, Mr. Lander argues that Dr. Leiphart's opinion is consistent with the longitudinal evidence. [Filing No. 25 at 3.] Mr. Lander argues that contrary to the Commissioner's argument, Dr. Brooks' opinion is not based on all relevant medical records since the ALJ admitted that records from Mr. Lander's mental health treatment at Gallahue were "filed after the hearing and unavailable to the medical experts who testified during the hearing." [Filing No. 25 at 3 (citation omitted).] He further argues that Dr. Leiphart's opinion should be given greater weight since he examined Mr. Lander and reviewed nearly all the same information as Dr. Brooks. [Filing No. 25 at 3.]

Generally, an ALJ will give more weight to an opinion of a medical source who has examined the claimant than to the opinion of a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(c)(1). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining

11

physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *Moore v. Barnhart,* 278 F.3d 920, 924 (9th Cir. 2002).

Under Step Two of the analysis, the ALJ outlined what weight he gave the opinion of Dr. Leiphart, who conducted a consultative psychological examination of Mr. Lander. [Filing No. 14-2 at 15.] The ALJ noted that when Dr. Leiphart examined Mr. Lander, she found that he had several moderate limitations and diagnosed him with unspecified anxiety disorder and depressive disorder. [Filing No. 14-2 at 15.] He then gave her opinion "less than considerable weight" because he found that Dr. Leiphart did not have access to the longitudinal medical record, "which the medical experts reviewed, analyzed and considered at the hearing, which reveal[ed] no more than mild limitations, if any, related to [Mr. Lander's] mental impairments. Further, her opinion is not generally consistent with the record as a whole." [Filing No. 14-2 at 15.] The ALJ then discussed the medical records from Gallahue Mental Health from February 2014, March 2014, April 2014, and June 2014, which the ALJ claimed demonstrate that he improved over time. [Filing No. 14-2 at 16.] The ALJ indicated that those records "were filed after the hearing and [were] unavailable to the medical experts who testified during the hearing." [Filing No. 14-2 at 16.] The ALJ then analyzed the opinion of Dr. Brooks, a clinical psychologist who reviewed Mr. Lander's records and testified at the hearing. Dr. Brooks noted that although Mr. Lander had mild to moderate limitations, they were non-severe and resulted in no limitations to do work-related activities. [Filing No. 14-2 at 16.] The ALJ gave great weight to this opinion because he claimed that Dr. Brooks reviewed the entire record "including the most up to date medical exhibits distributed at the hearing, and offered a thorough analysis of the medical evidence pertinent to his medical expertise." [Filing No. 14-2 at 16.]

The Court finds error with the ALJ's explanation. As Mr. Lander points out, Dr. Leiphart opined that Mr. Lander had more restrictions than the restrictions noted by Dr. Brooks. As noted above, the Social Security regulations require the ALJ to afford greater weight to an examining physician, and the ALJ may reject an examining physician's opinion only if it is supported by substantial evidence in the record, not just merely because of a contradictory opinion of a non-examining physician. Here, the ALJ fails to explain what records are inconsistent with Dr. Leiphart's opinion, and likewise, does not describe what records are consistent with Dr. Brooks' opinion. Although the ALJ noted that Mr. Lander's treatment from Gallahue Mental Health showed improvements, neither physician reviewed those records. Moreover, the ALJ indicates that Dr. Leiphart did not have access to Mr. Lander's longitudinal record, but again fails to describe what records she lacked. On remand, the ALJ must describe what records he relied upon in determining what weight to give Dr. Leiphart's opinion. In addition, because Dr. Leiphart opined that Mr. Lander suffered from unspecified anxiety disorder and depressive disorder under Step Two of the analysis, after a review of the evidence, the ALJ must again determine whether they amount to severe impairments.

**C. Other Issues**

As discussed above, the Court has found that remand is necessary so that the ALJ can properly consider the opinions of Dr. Lim and Dr. Leiphart with respect to evidence in the record. In the interest of thoroughness, the Court will briefly discuss Mr. Lander's other arguments.

First, Mr. Lander argues that the ALJ erred in the credibility analysis when he wrongly claimed that Mr. Lander was still smoking, found Mr. Lander less credible because of his inability to pay child support, and overlooked evidence that demonstrates he experienced dizziness and lightheadedness. [Filing No. 19 at 26-27.] A credibility determination by the ALJ is given

"considerable deference." *Prochaska*, 454 F.3d at 728. The ALJ's credibility determination will be reversed only if he fails to base the determination on grounds that are reasonable or supported by the evidence of record. *See Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). First, as discussed above, the Court agrees that the ALJ failed to consider evidence in the record where Mr. Lander complained of dizziness and lightheadedness. [*See* Filing No. 14-9 at 17; Filing No. 14-9 at 60; Filing No. 14-10 at 15; Filing No. 14-10 at 19; Filing No. 14-10 at 27-28; Filing No. 14-10 at 43; Filing No. 14-10 at 52-53; Filing No. 14-12 at 3; Filing No. 14-12 at 7; Filing No. 14-12 at 11-12; Filing No. 14-12 at 15-16; Filing No. 14-12 at 20; Filing No. 14-12 at 29-30; Filing No. 14-13 at 23-24.] Second, the Court finds that the ALJ also erred when he discredited Mr. Lander in part for "noncompliance" because he continued to smoke a year after telling his physicians that he would quit smoking. In support of this finding, the ALJ cited to evidence in the record that does not exist, [*see* Filing No. 14-2 at 19 (citing to "Ex. 7F, 6-7")], and the Commissioner in response does not point to what evidence the ALJ relied upon. Therefore, because of these errors, the Court instructs the ALJ to review the record and provide a proper credibility analysis.

Second, Mr. Lander claims that the ALJ erred by relying on vocational testimony that does not correspond to the hypothetical that he posed at the hearing. [Filing No. 19 at 28-29.] However, because the ALJ failed to consider other evidence noted above that could impact Mr. Lander's RFC determination, the Court instructs the ALJ to properly consider all the evidence and instruct the vocational expert regarding all of Mr. Lander's limitations to determine whether Mr. Lander can perform any jobs in the national economy.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Mr. Lander benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g)(sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: 7/7/2017

*[Signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**